IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-162-FL

| | |
|---|---|
| MICKEY ALLEN COX, </br></br>　　　　Plaintiff, </br></br>　　v. </br></br> NANCY A. BERRYHILL, </br> Acting Commissioner of Social Security, </br></br>　　　　Defendant. | **MEMORANDUM </br> AND RECOMMENDATION** |

In this action, plaintiff Mickey Allen Cox ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on plaintiff's motion for summary judgment (D.E. 14)[2] and the Commissioner's motion for judgment on the pleadings (D.E. 16). Both filed memoranda in support of their respective motions. D.E. 15, 17. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 13 Jan. 2017 Text Ord. For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416. The versions of the regulations cited herein are those in effect at the time of issuance of the ALJ's decision.

[2] Plaintiff's motion should have been in the form of a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), as directed in the court's 26 August 2016 order (D.E. 9 ¶ 1).

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB and an application for SSI on 24 August 2012, both alleging a disability onset date of 1 January 2009. Transcript of Proceedings ("Tr.") 16, 213, 220. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 16. On 21 May 2014, a hearing was convened before an administrative law judge ("ALJ"), but the ALJ postponed the proceedings to allow for a consultative evaluation. Tr. 16, 81-87. The postponed hearing was held on 25 September 2014. Tr. 16, 38-80. Plaintiff, represented by counsel, and a vocational expert ("VE") testified at the hearing. Tr. 16, 38-80. As announced at the hearing, on the same date plaintiff amended his disability onset date to 1 August 2012 in writing. Tr. 40, 240. The ALJ issued a decision denying plaintiff's claims on 7 November 2014. Tr. 16-31.

Plaintiff timely requested review by the Appeals Council. Tr. 11. In an order dated 25 April 2016, the Appeals Council admitted into the record (Tr. 5) additional evidence submitted by plaintiff spanning the period from 31 July 2013 to 21 January 2015 (Tr. 530-66), including a letter dated 21 January 2015 from board-certified psychiatrist Eric Q. Mizelle, M.D., of Greater Image Healthcare, Corporation ("Greater Image") (Tr. 566). Nonetheless, in a decision also dated 25 April 2016, the Appeals Council denied review, stating:

> [W]e considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the [ALJ's] decision.

Tr. 2; *see also* Tr. 1. ("[W]e have denied your request for review.").

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 20 June 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See* Compl. (D.E. 1).

**B.     Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see id.* § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see id.* § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.

3

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a [VE] responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

## C. ALJ's Findings

Plaintiff was 43 years old on the amended alleged onset date of disability and 45 years old on the date of the hearing. Tr. 29 ¶ 7; 45. The ALJ found that plaintiff has at least a high

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

4

school education (Tr. 29 ¶ 8) and past relevant work as a carpenter and short-haul truck driver (Tr. 29 ¶ 6).

The ALJ found that plaintiff met the insured requirements under the Act through 31 December 2012. Tr. 18 ¶ 1. Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ then found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged disability onset date, 1 August 2012. Tr. 18 ¶ 2. At step two, the ALJ found that plaintiff has the following medically determinable impairments that are severe within the meaning of the Regulations: chronic back pain due to post-laminectomy syndrome; obesity; hypertension; attention deficit/hyperactivity disorder ("ADHD"); and bipolar disorder. Tr. 19 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 19 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b),[6] with the following provisos: he requires a sit/stand option of 2 position changes per hour. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and/or crawl. He must avoid concentrated exposure to work place hazards, such as dangerous moving machinery and unprotected heights. The claimant can understand and perform simple, routine, repetitive tasks and maintain concentration, persistence, and pace in order to stay on tasks for 2-hour periods over the course of a typical 8-hour workday in order to perform such tasks, in a low stress work setting, further defined to mean no production-pace or quota-based work, rather a goal oriented job dealing primarily with things as opposed to people, with no more than occasional changes in work setting.

Tr. 22 ¶ 5.

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 29 ¶ 6. At step five, the ALJ accepted the testimony of the VE and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of electronics worker, laundry folder, and shipping/receiving weigher. Tr. 29-30 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the amended alleged disability onset date, 1 August 2012, through the date of the decision, 7 November 2014. Tr. 30 ¶ 11.

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King*

*v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded, or in the alternative, that the case should be remanded for rehearing on the grounds that the ALJ did not properly evaluate the opinions of Gerald Bynum, P.A.-C. ("P.A. Bynum")[7] of Greater Image.

---

[7] "P.A.-C." means, of course, certified physician's assistant. This designation is used for Gerald Bynum throughout the record. *See* Tr. 484-93, 519-21; *see also* Tr. 566 ("[Plaintiff] has been seen by our Physician Assistant."). Nonetheless, plaintiff refers to him, erroneously, as "Dr. Bynum." Pl.'s Mem. 13.

Alternatively, plaintiff seeks remand for consideration of the letter by Dr. Mizelle that he submitted to the Appeals Council. The court addresses each issue in turn.

## IV.   ALJ'S ASSESSMENT OF P.A. BYNUM'S OPINIONS

### A.   Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with

the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other so-called "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level, or so-called "other sources," including physician's assistants. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (listing physician's assistants among other sources). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier*, 2013 WL 1856469, at *2. The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from an other source, although circumstances can justify giving opinions of an other source greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted,* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue,* No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than to the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g., Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all

evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

**B.    Analysis**

P.A. Bynum treated plaintiff at Greater Image from 4 October 2013, when plaintiff began treatment there,[8] to at least 15 August 2015. Tr. 530-43. Over this period, P.A. Bynum saw plaintiff at 14 office visits.[9] On 1 August 2014, two weeks prior to the final office visit of record, P.A. Bynum issued a medical source statement about plaintiff on a three-page preprinted form. Tr. 515-17. The principal areas of inquiry were: (1) impairments in activities of daily living (Tr. 515 nos. 1-2); (2) impairments in social functioning (Tr. 515-16 nos. 3-4); (3) impairments in maintaining concentration, persistence, or pace, including results on tests measuring concentration and conduct during stressful circumstances (Tr. 516-17 nos. 5-8); (4) repeated episodes of decompensation (Tr. 517 nos. 9, 10.B.); and (5) history of a chronic affective disorder (Tr. 517 no. 10). The first four areas are the so-called "Paragraph B" criteria included in the special technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. Each question in the fifth area related to one of the criteria of Listing 12.04C for affective disorders.[10]

---

[8] There is a Comprehensive Clinical Mental Health Assessment form from Greater Image dated 31 July 2013 and signed by Regina Kelly, MSW, LCSW. Tr. 479-83. The assessment appears to have been done in order to determine plaintiff's mental health needs and the treatment required. There are no other records from Greater Image preceding the 4 October 2013 visit.

[9] The dates of the four office visits in 2013 were: 4 and 10 October (Tr. 530, 531); 1 November (Tr. 532); and 10 December (Tr. 533). The dates of the ten office visits in 2014 were: 2 January (Tr. 534); 30 January (Tr. 535); 26 February (Tr. 536); 25 March (Tr. 537); 10 April (Tr. 538); 18 April (Tr. 539); 15 May (Tr. 540); 20 June (Tr. 541); 18 July (Tr. 542); and 15 August (Tr. 543).

[10] Listing 12.04C reads:

11

In his statement, P.A. Bynum found that plaintiff had marked or extreme impairments in specific areas of activities of daily living (Tr. 515 nos. 1-2); social functioning (Tr. 515-16 nos. 3-4); and concentration, persistence, or pace (Tr. 516-17 nos. 5, 7, 8). He also found that plaintiff did not have repeated episodes of decompensation, although he noted the one episode that he did have. Tr. 517 nos. 9, 10.B. P.A. Bynum further found in effect that plaintiff met the criteria in Listing 12.04C2 and 3.

The ALJ gave "limited weight" to P.A. Bynum's opinions, giving three principal reasons for his determination:

> The undersigned also considered the August 1, 2014 Medical Source Statement of Gerald Bynum, P.A.C. (Ex. 15F) and gave it limited weight. [1] Although not considered an acceptable medical source by Social Security regulations, [2] Mr. Bynum does have a treating relationship with the claimant. [3] However, his opinion that the claimant has a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement [*i.e.*, meets Listing 12.04C3] is not consistent with the medical evidence of record, wherein the claimant reported living alone and no problems with his activities of daily living related to mental difficulties (Ex. 13F:2), or with his own treating records that reflect the claimant doing well and verbalizing understanding (Ex. 16F).

Tr. 28 ¶ 5.

The court finds no error in the ALJ's assessment. Each of the reasons given by the ALJ is supported by substantial evidence and based on proper legal standards.

---

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.04C.

As to the first reason—P.A. Bynum is not an acceptable medical source—there is no dispute that P.A. Bynum is a physician's assistant and not a physician or psychologist. Given this status, he is not an acceptable medical source, but rather an other source, as a matter of law. Further, his status as an other source is a proper reason for discounting the weight accorded his opinions. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

Similarly, as to the second reason—P.A. Bynum's status as a treating provider—there is no dispute that P.A. Bynum treated plaintiff. His status as a treating provider is a proper reason for attributing weight to his opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's reliance on this factor is not inconsistent with his assignment of limited weight to P.A. Bynum's opinions. By attributing "limited weight" to P.A. Bynum's opinions, the ALJ was signifying that he was giving them some weight and not discounting them entirely. That the ALJ did give P.A. Bynum's opinions some weight is confirmed by his inclusion in his RFC determination of restrictions relating to mental activities in which P.A. Bynum found plaintiff to be limited:

> The claimant can understand and perform simple, routine, repetitive tasks and maintain concentration, persistence, and pace in order to stay on tasks for 2-hour periods over the course of a typical 8-hour workday in order to perform such tasks, in a low stress work setting, further defined to mean no production-pace or quota-based work, rather a goal-oriented job dealing primarily with things as opposed to people, with no more than occasional changes in the work setting.

Tr. 22 ¶ 5.

As indicated, the third reason given by the ALJ—lack of consistency with the record—relates expressly to P.A. Bynum's opinion that "claimant has a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement," again, the criteria set out in Listing 12.04C3. Tr. 28 ¶

13

5. Lack of consistency with the record is a proper reason for discounting the weight given a medical source's opinion. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Further, substantial evidence supports the specific inconsistencies the ALJ cites. As the ALJ found, plaintiff did report living alone and having no problems with activities of daily living as a result of his mental impairments in the exhibit the ALJ cites, the report by psychiatrist Atul Kantesaria, M.D. on his consultative evaluation of plaintiff on 5 July 2014, within a month of P.A. Bynum's statement. Tr. 496. Dr. Kantesaria's report reads in relevant part: "He lives alone . . . . He can do his own ADLs. No problem with that, but chronic pain and other issues like focusing and stuff are not easy without treatment." Tr. 496. Likewise, P.A. Bynum's own treatment notes around the time of his statement reflect, as the ALJ found, that plaintiff was doing well and verbalizing understanding. Tr. 541 (20 June 2014); 542 (18 July 2014); 543 (15 Aug. 2014)).

Although the ALJ expressly relates the evidence in Dr. Kantesaria's report and P.A. Bynum's own treatment notes to P.A. Bynum's opinion regarding the criteria in Listing 12.04C3, this same evidence on its face also contradicts P.A. Bynum's findings of extreme or marked limitations in activities of daily living and concentration, persistence, or pace. Further, the ALJ's rejection of P.A. Bynum's findings of extreme or marked limitations on the Paragraph B criteria mirrors the ALJ's own determinations on these criteria at step three of the sequential analysis. There, the ALJ found plaintiff to have only mild limitations in activities of daily living; moderate limitations in concentration, persistence, or pace and social functioning; and absence of repeated episodes of decompensation, each of extended duration. Tr. 20-21 ¶ 4.

Plaintiff argues that the ALJ erred by not considering P.A. Bynum's treating relationship with plaintiff, the consistency of his opinions with the record as a whole, and the other factors

required to be considered under the Regulations. But, as discussed, the ALJ expressly discussed P.A. Bynum's status as a treating source and the consistency of numerous of his opinions with the other evidence of record. While it is true that an ALJ must consider these and the other factors recognized in the Regulations, the ALJ is not required to discuss them all as long as he makes clear the weight he assigned the opinions and the reasons for such assignment. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6. The ALJ therefore did not err in not discussing comprehensively all factors that can bear on the weight due a medical source opinion.

Plaintiff also complains that the ALJ did not discuss each distinct opinion of P.A. Bynum. But where a source provides opinions about several issues, "it is not necessary in every case [for the ALJ] to evaluate each treating source medical opinion separately." Soc. Sec. Ruling 96-2p, Soc. Sec. Ruling 96-2p, 1996 WL 374188 , at *2. The court finds that the ALJ's discussion of P.A. Bynum's statement was sufficient to indicate the weight he gave the opinions therein and the reasons for doing so.

The court concludes that the ALJ's assessment of P.A. Bynum's medical source statement was based on applicable legal principles and supported by substantial evidence. The court accordingly rejects plaintiff's challenge to the assessment.

## V.     DR. MIZELLE'S LETTER

### A.     Applicable Legal Principles

As noted, when the Appeals Council admits additional evidence into the record before denying a claimant's request for review, "the court must review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the [ALJ's] findings." *Wilkins*, 953 F.2d at 96 (internal quotation marks omitted). At the same time, the court must not resolve conflicts in the evidence. *See Davis v. Barnhart*, 392 F. Supp. 2d 747,

751 (W.D. Va. 2005) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). To properly balance its obligations to review the entire record and to refrain from fact finding, the court "should conduct a limited analysis of the additional evidence to assess whether the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Felts*, 2012 WL 1836280, at *1 (quoting *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 470 (W.D. Va. 2010) (internal quotation marks omitted)); *see also Davis*, 392 F. Supp. 2d at 751. In the event the additional evidence meets any of these criteria, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. *Felts*, 2012 WL 1836280, at *1.

**B.     Analysis**

As noted, board-certified psychiatrist Dr. Mizelle of Greater Image issued a letter dated 21 January 2015, after the ALJ hearing, which the Appeals Council admitted into the record. The text of the letter reads:

> [Plaintiff] has been coming to our clinic since October 4, 2013 and has been seen by our Physician Assistant. I met with him today and he has three main problems of paranoia, auditory hallucinations and mood swings. He has had many different diagnosis including Bipolar, Schizophrenia, Paraniod type, ADHD, Cocaine Dependence in remission for the past 6 years and Depression. Today he is currently on Haldol, Cogentin and Adderall. These meds have decreased his paranoia and voices, which are his main symptoms.
>
> His mental illness began as a child when he started hearing voices. He first received help in October 2013. He coped initially by being reclusive (not marrying, interacting with the public or having any children) and using drugs.
>
> His mental illness affects his ability to work in that his insight is inhibited by his psychosis. Although he takes meds, he still has paranoia. This affects his ability to interact with others and have any meaningful relationships. The longest time he had been at one job in his life had been one year. His mother and father support him financially.

Tr. 566 (formatting modified from original).

Plaintiff contends that the letter precludes a determination that the ALJ's decision is supported by substantial evidence and requires remand of this case for consideration of the record as supplemented by the letter. The court disagrees.

Much of the letter consists of a summary of plaintiff's course of treatment at Greater Image. This information is cumulative of information already in the record.

Among the few opinions he expresses, Dr. Mizelle opines that plaintiff has paranoia and that it "affects his ability to interact with others and have any meaningful relationships." Tr. 566. In his report, consulting examining psychiatrist Dr. Kantesaria expressed essentially the same opinion. He found that plaintiff "may have some vague paranoia" and that "[c]apacity to relate to others including fellow workers and supervisors, mild, possibly moderate effect." Tr. 497. In fact, Dr. Mizelle's opinion arguably carries less potential weight than Dr. Kantesaria's for several reasons, although both Dr. Mizelle and Dr. Kantesaria are psychiatrists. While Dr. Kantesaria specifies the degree to which plaintiff's ability to deal with others was impaired, Dr. Mizelle's opinion does not. Further, Dr. Kantesaria's opinion is the product of an extensive evaluation documented in his report. Dr. Mizelle states merely that he "met" with plaintiff, and his letter lacks extensive findings like those included in Dr. Kantesaria's report. Tr. 566.

Dr. Mizelle also opines that plaintiff's "mental illness affects his ability to work in that his insight is inhibited by his psychosis." Tr. 566. This opinion is so vague as to be of little potential probative value. It does not identify into what plaintiff's insight is purportedly inhibited, specify the degree of the purported inhibition, or explain how plaintiff's ability to work is affected by the purported inhibition. The lack of supporting documentation in Dr. Mizelle's letter also reduces the weight properly accordable to this opinion, as with the opinion on the ability to interact with other people.

By attributing the purported inhibition of plaintiff's insight to "his psychosis," Dr. Mizelle is, of course, opining that plaintiff's mental illness includes psychosis. Tr. 566. This opinion contrasts with Dr. Kantesaria's opinions that he did "not see psychosis per se" and that plaintiff is "not psychotic." Tr. 497. Dr. Mizelle's opinion may be the only opinion by an acceptable medical source that plaintiff has a psychosis, although P.A. Bynum, an other source, repeatedly found plaintiff to have schizophrenia (*see* Tr. 539-43). But the only work-related limitation Dr. Mizelle expressly links to the psychosis he found plaintiff to have is the purported inhibition of insight just discussed. That opinion has limited potential probative force for the reasons stated. Moreover, a diagnosis alone, without a showing of the limitations it imposes, lends scant support to a claim of disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . says nothing about the severity of the condition."). And, as with Dr. Mizelle's other opinions, the specific opinion on psychosis is not explicitly explained or otherwise supported in the letter.

The ALJ, of course, included numerous limitations in his RFC determination responsive to plaintiff's mental impairments. Based on the considerations discussed, there are no reasonable grounds upon which to believe that reconsideration of the record in this case as supplemented by Dr. Mizelle's letter would result in a different RFC determination and thereby a different outcome on the ultimate issue of disability.[11]

---

[11] At step two of the sequential analysis, the ALJ found that schizophrenia was not a severe impairment plaintiff had. Tr. 19 ¶ 3. As indicated, plaintiff had been diagnosed with schizophrenia at Greater Image by P.A. Bynum, whose opinion as an other source could not be the basis for a finding that an impairment is severe. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Nonetheless, Dr. Mizelle's letter could not be expected to alter the ALJ's step-two determination on schizophrenia. Among other reasons, the ALJ did not expressly identify P.A. Bynum's other source status as a basis for his determination, Dr. Mizelle did not expressly diagnose plaintiff with schizophrenia, and, as discussed, his letter contains scant supporting information. This paucity of support contrasts with the

The court concludes that the Appeals Council's inclusion of Dr. Mizelle's letter in the record does not require remand of this case. The court accordingly rejects this basis for plaintiff's appeal.

## VI. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 16) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 14) for summary judgment be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 22 August 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the**

---

evidentiary findings the ALJ made to substantiate his determination that schizophrenia is not a severe impairment of plaintiff's: the mental status exams from Greater Image do not support the diagnostic criteria for schizophrenia, citing Listing 12.03; Dr. Kantesaria did not diagnose schizophrenia; and an August 2014 hospital record noted essentially normal findings. Tr. 19 ¶ 3. In any event, the ALJ considered plaintiff's mental impairments in the subsequent steps of the sequential analysis, thereby effectively mooting their characterization at step two. *See, e.g., Calhoun v. Colvin*, No. 5:13–CV–108–D, 2014 WL 4243784, at *14 (E.D.N.C. 22 July 2014), *mem. & recomm. adopted*, 2014 WL 4243789, at *1 (26 Aug. 2014).

**Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after filing of the objections.

This 8th day of August 2017.

_____
James E. Gates
United States Magistrate Judge